## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

ALLSTATE INSURANCE COMPANY,

      Plaintiff,

vs.                                                    Civ. No. 00-1598 MV/DJS

PERFORMANCE COATINGS, INC., and
DOES 1-10, inclusive,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Performance Coatings, Inc.'s

Motion for Summary Judgment Based Upon Liquidation of Reliance Insurance Companies, filed

July 22, 2002 **[Doc. No. 36]**.  The Court, having considered the motion, briefs, relevant law and

being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED.**

### BACKGROUND

On October 8, 1999, a Taos, New Mexico residence owned by Sharon Porter was

destroyed by a house fire allegedly resulting from spontaneous heating caused by a wood finishing

product used by Ms. Porter to finish furniture.  Ms. Porter was compensated for her losses, which

totaled $228,326.14, by her insurer, Plaintiff Allstate Insurance Company ("Allstate").

On September 22, 2000, Allstate filed a complaint in the Eighth Judicial District Court,

County of Taos, State of New Mexico, seeking to recover from Defendant Performance Coatings,

Inc., ("Performance") the monies it paid to Ms. Porter as a result of the house fire.  In its

complaint, Allstate alleges that an oil finish product manufactured by Performance caused the fire

in Ms. Porter's residence.   Allstate contends that Performance failed to adequately warn users of

the flammability of the product (Count I) and that Performance failed to exercise reasonable care

in the design, manufacture, distribution and/or sale of the product (Count II).  The case was

removed to this Court by Performance pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

Performance is insured under an insurance policy issued by Reliance National Indemnity

Company ("Reliance").  Reliance undertook the defense of Performance in this lawsuit pursuant

to this policy.  On October 3, 2001, Reliance was placed into liquidation by a Pennsylvania court.

Performance subsequently filed the instant motion asserting that this action must be dismissed

because the New Mexico Insurance Code prohibits insurance companies from bringing

subrogation claims against the insureds of insolvent insurers.

## STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287,

1290 (10th Cir. 1999).  Under Rule 56(c), "the mere existence of *some* alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary

judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine

issue of material fact.  *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.

1993).  There is no requirement that the moving party negate the nonmovant's claim.  *See Celotex Corp. v. Catrett*,  477 U.S. 317, 325 (1986).  Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted).  Rather than "merely show there is some metaphysical doubt as to the material facts," the nonmoving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial."  *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Anderson*, 477 U.S. at 248.   Upon a motion for summary judgment, the Court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence."  *Kaus*, 985 F. Supp at 1281.

## DISCUSSION

The New Mexico Property and Casualty Insurance Guaranty Law, NMSA 1978 § 59A-43-1 *et seq*., ("Guaranty Act") was enacted, in part, to protect policyholders and claimants from financial losses due to the insolvency of an insurance company.  *See* NMSA 1978 § 59A-43-2; *In re Mission Ins. Co.*, 816 P.2d 502, 504 (N.M. 1991) ("The Guaranty Association was created for the benefit of claimants or policyholders in the event that the insurance companies became insolvent and unable to pay any outstanding claims.").  The Guaranty Act creates an Association in which specified types of insurers, including property and casualty insurers, are required to maintain membership as a condition of their authority to conduct business in New Mexico. NMSA

1978 §§ 59A-43-2, 59A-43-3 & 59A-43-5.  Member insurers are assessed fees which make up

the assets of the Association.  *Id*. at § 59A-43-7(A)(3).  When a liability insurer becomes

insolvent, the Association is deemed the insurer of the policyholder and uses the assets derived

from member assessments to pay "covered claims."  *Id*. at § 59A-43-7(A)(2).

  A "covered claim" is defined, in relevant part, as:

> an unpaid claim of an insured or of a liability claimant . . . that arises out of and
> within the coverage and not in excess of the applicable limits of an insurance policy
> to which Chapter 59A, Article 43 NMSA 1978 applies, issued by an insurer
> authorized to transact insurance in this state, if such insurer becomes an insolvent
> insurer after April 4, 1973; and
> (1) the liability claimant or insured is a resident of this state at the time of the
> insured event; or
> (2) the property from which the claim arises is permanently located in this state.

NMSA 1978 § 59A-43-4(C).[1]

  The Guaranty Act excludes from the definition of "covered claim," any amounts due an

insurer as "subrogation recoveries or otherwise."  NMSA 1978 § 59A-43-4(C).  However, if a

claim by an insurer would be a "covered claim" but for the fact that it was brought by an insurer,

the claim may be filed directly with the receiver of the insolvent insurer:

> "Covered claim" shall not include any amount due any . . . insurer . . . as
> subrogation recoveries or otherwise; provided, that a claim for any such amount,
> asserted against a person insured under a policy issued by an insurer which has
> become an insolvent insurer, which if it were not a claim by or for the benefit of
> a[n] . . . insurer . . . would be a "covered claim," may be filed directly with the
> receiver of the insolvent insurer, but in no event may any such claim be asserted in

---

  [1]An "insolvent insurer" is defined as "(1) an insurer licensed to transact business in this
state, either at the time the policy was issued or when the insured event occurred; and (2) against
which an order of liquidation with a finding of insolvency has been entered after the effective date
of the Insurance Code by a court of competent jurisdiction in the insurer's state of domicile, or of
this state under the provisions of Section 59A-41-30 NMSA 1978, and which order of liquidation
has not been stayed or been the subject of a writ of supersedeas or other comparable order."
NMSA 1978 § 59A-43-4 (D).

any legal action against the insured of such insolvent insurer.

NMSA 1978 § 59A-43-4(C).

The parties do not dispute that 1) Allstate is seeking to recover, under principles of subrogation, funds Allstate paid to its insured, Ms. Porter, as the result of a house fire in New Mexico; 2) Performance is insured under a policy of insurance issued by Reliance; 3) Reliance is authorized to do business in New Mexico; and 4) Reliance has been placed into liquidation by a Pennsylvania court.  The Court finds that there are no material facts in dispute and that this case is appropriate for summary judgment.[2]

Allstate asserts that its subrogation claim against Performance is not barred by the Guaranty Act because 1) Performance has not demonstrated that Allstate's claim "arises out of and within the coverage" of the Reliance policy and 2) Allstate's claim is a "tort action in subrogation" and therefore is excluded from the definition of "covered claim."   Allstate further contends that a "Notice" issued by the Statutory Liquidator permits its claim to proceed in this Court.  These arguments are not persuasive.

First, Allstate asserts that its claim is not a "covered claim" within the meaning of the Guaranty Act because its claim does not "arise[] out of and within the coverage" of the Reliance policy issued to Performance but, instead, "arises out of the tort allegations set forth in its Complaint."   Allstate's argument, which is not developed and is not supported by citation to law or fact, appears to be that third-party claims do not "arise out of and within the coverage" of the policy issued by the insolvent insurer to the insured and therefore, cannot be "covered claims"

---

[2]Allstate disputes whether the California Insurance Guarantee Association is administering the Reliance claim file or this lawsuit.  This fact, however, is not material to the instant motion.

within the meaning of the Guaranty Act.

The Guaranty Act clearly contemplates that both first- and third-party claimants may possess covered claims.   The stated purpose of the Guaranty Act is to "avoid . . .financial loss to claimants *or* policyholders because of the insolvency of an insurer."   NMSA 1978 § 59A-43-2 (emphasis added).  Furthermore, the Guaranty Act contains multiple references to "the insured or liability claimant." *See id.*§ 59A-43-4(C)(1) ("liability claimant or insured"  must be resident of New Mexico); § 59A-43-7(A)(1) (Association not obligated to "policyholder or claimant" in amount excess of obligation of the insolvent insurer); § 59A-43-4 (defining a "covered claim" as "an unpaid claim of an insured or of a liability claimant"). If only an insured or policyholder (*i.e.,* a first-party claimant) could possess a "covered claim," there would be no need to include references to "liability claimant *or* insured" and "claimants *or* policyholders" because only an insured or policyholder could be a claimant.

The plain language of the Guaranty Act establishes that third-party claimants may have covered claims within the meaning of the Act and recognition of third-party claims is necessary to further the Guaranty Act's stated purpose of providing protection to "claimants or policyholders." Consequently, the Court finds that losses occasioned to third parties caused by the insured, and for which the insured would be entitled to coverage from its insurer but for the insurer's insolvency, "arise out of and within the coverage."

The Court's determination that both first- and third-party claims fall within the Guaranty Act's broad definition of "covered claim" is consistent with well-reasoned opinions from several other jurisdictions in which courts have interpreted virtually identical provisions in other state insurance guaranty statutes.  *See Bell v. Slexak*, 812 A.2d 566 (Pa. 2002) (holding that both first-

-6-

party and third-party claimants may possess "covered claims"); *New Hampshire Ins. Guar. Ass'n v. Pitco Frialator, Inc.*, 705 A.2d 1190 (N.H. 1998) (holding that "covered claim" refers to both first- and third-party claims); *Connecticut Ins. Guar. Ass'n. v. Union Carbide Cor*p., 585 A.2d 1216 (Ct. 1991) (rejecting argument that only an insured can have a claim that "arises out of and is within the coverage" and finding that tort victims possess "covered claims").

Having determined that a third-party tort claim can "arise out of and within the coverage" for purposes of having a "covered claim," the Court must determine whether Allstate's claim "arise[s] out of and within the coverage" of the Reliance policy.  The parties have stipulated that this lawsuit was being defended under the Reliance policy issued to Performance.  Reliance, in assuming the defense of Allstate's claim against Performance, must have determined that the claim was within the coverage of its policy.  The Court finds that an insurer's determination, prior to its insolvency, that a claim is within the coverage of its policy satisfies the requirement that a claim "arise out of and within the coverage" of an insurance policy for purposes of determining if a claim is a "covered claim" within the meaning of the Guaranty Act.

Next, Allstate asserts that its subrogation claim against Performance is not prohibited by the Guaranty Act because the Act excludes from "covered claims" "any amount due any . . . insurer . . . as subrogation recoveries or otherwise."  § 59A-43-4(C).  The Act goes on to provide, however, that if a claim by an insurer would be a "covered claim" if it were not a claim by or for the benefit of an insurer, the claim "may be filed directly with the receiver of the insolvent insurer, *but in no event may any such claim be asserted in any legal action against the insured of such insolvent insurer*."  *Id.*  (emphasis added).  As Allstate's claim would qualify as a "covered claim" if it were not brought by an insurer, the plain, unambiguous language of the

statute bars Allstate from maintaining this claim directly against Performance.

Other courts have similarly held that prohibited subrogation claims under state guaranty laws include liability claims against tortfeasors. *See Garrett v. Overland Garage & Parts, Inc.*, 882 S.W.2d 188, 192-193 (Mo. Ct. App. 1994) (interpreting virtually identical provision as precluding insurer from recovering any subrogation amount from a tortfeasor insured by an insolvent insurer.); *Witkowski v. Brown*, 576 A.2d 669 (Del. Super. Ct. 1989) (holding that virtually identical provision in Delaware guaranty law barred subrogation claim by insurer against insureds as alleged tortfeasors insured by an insolvent insurance company); *Pinkham v. Morrill*, 622 A.2d 90 (Me. 1993) (holding that Maine Insurance Guaranty Association Act barred subrogated actions by insurer against tortfeasor when tortfeasor's liability insurer had become insolvent).

Finally, Allstate asserts that a "Notice" issued by Reliance's Statutory Liquidator permits Allstate to pursue this action directly against Performance.[3]  The Statutory Liquidator issued a Notice describing the liquidation procedure established for Reliance, including the process for filing a proof of claim with the Statutory Liquidator.  The Notice contains the following provision:

> You are a third party claimant if you have a claim against a Reliance insured which may be covered by the insured's insurance policy.  You may either file a claim with the Statutory Liquidator or pursue legal action against the insured to recover your

---

[3]  Allstate filed a supplemental response asserting that because court supervision of the liquidation of Reliance had ended, there was no further justification for the relief sought by Performance in the instant motion.  This argument is without merit.  The New Mexico Guaranty Act applies to insurers "against which an order of liquidation with a finding of insolvency has been entered . . .." NMSA 1978 § 59A-43-4(D)(2). A Pennsylvania court has entered an order of liquidation with a finding of insolvency against Reliance.  The fact that the Pennsylvania court is no longer overseeing the liquidation of Reliant is irrelevant to the determination of whether the New Mexico Guaranty Law prohibits Allstate from pursuing its subrogation action against Performance.

claim.  If you file a claim with the Liquidator, filing of the claim shall operate as a
release of the insured's liability to you on that cause of action in the amount of
applicable policy limits.  If coverage of the claim is avoided by the Liquidator, this
release becomes null and void.

Allstate asserts that the Notice authorizes Allstate to pursue its subrogation claim directly
against Performance in this Court because the New Mexico Guaranty Act does not prohibit its
subrogation claim.  As explained above, the Court has found that the Guaranty Act precludes a
subrogation claim directly against the insured of an insolvent insurer.  Furthermore, Allstate has
provided, and the Court has found, no support for the proposition that the Notice overrides state
guaranty laws.  To the contrary, the Notice repeatedly recognizes that claims are subject to the
provisions of various state guaranty laws.  *See* Notice at p. 3. ("Certain claims may also be
covered by guaranty associations in the state of their residence or in the state of the insured's
residence . . . The various state laws governing the guaranty associations include eligibility
requirements and limits on the amount of coverage available."); *Id.* ("Some state guaranty
associations have statutory claim filing provisions which will prohibit payment by the guaranty
association after a certain period of time has elapsed . . . This is another reason you should
promptly file your claim."); *Id.* at 5-6 ("Subject to statutory eligibility and claims payment limits, a
guaranty association assumes the policyholder obligations . . . ."); *Id.* at 6 (instructing potential
claimants to address questions about what is and is not covered by the guaranty association to
their state guaranty association).

The Court concludes that the Notice authorizes third-party claimants to file actions
directly against an insured only if such actions are permitted by state guaranty laws.  As discussed
above, New Mexico's Guaranty Act precludes Allstate from maintaining an action directly against

-9-

Performance.

## CONCLUSION

Allstate's claim for subrogation recovery against Performance for the monies Allstate paid to Ms. Porter as a result of a house fire in Taos, New Mexico is barred by the New Mexico Guaranty Act because Performance's insurer is insolvent.  Pursuant to the provisions of the New Mexico Guaranty Act, Allstate may pursue its claim through the liquidation claims process in Pennsylvania.

**IT IS THEREFORE ORDERED** that Defendant Performance Coatings, Inc.'s Motion for Summary Judgment Based Upon Liquidation of Reliance Insurance Companies, filed July 22, 2002, **[Doc. No. 36]** is hereby **GRANTED.**

Dated this 3rd day of February, 2004.

_____
MARTHA VAZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
        Harvey Fruman, Esq.

Attorney for Defendant:
        Gary J. Van Luchene, Esq.